Good afternoon, Your Honors. On the police court, I am Brent Blakely, and I represent Noah Johnson. I would like to focus on two issues at this time, the first being the district court's ruling that the statute of frauds barred the renewal agreement between Noah Johnson and Hurley, the second being the district court's ruling denying Mr. Johnson the fair market value of his likeness in connection with his right to publicity claim. In this case, both parties agree that in October-November of 1999, Noah Johnson entered into a renewal contract with Hurley regarding the continuation of his agreement. There is no dispute with any of the terms of that agreement, with the exception of duration. Both parties agree as to how much Mr. Johnson was going to be paid pursuant to that agreement, to the incentives in that agreement, what his obligations were pursuant to that agreement. Again, the only issue that is in dispute and has ever been in dispute is the duration. Hurley contends that it was one year. Noah Johnson contends that it was for three years. So, really, the first issue I'd like to address is whether or not the letter from Hurley's chief financial officer, Mike Oshner, constitutes a memorandum which would take the agreement outside of the statute of frauds. That document states that Mr. Johnson is an independent contractor under contract with Hurley as a professional surfer. The basic terms of the contract call for monthly payments of $5,000 for three years beginning January 2000. Levin v. Knight and Siemens in the Supreme Court's decision in Siemens make it very clear that only terms that are independent and in dispute need to be in the memorandum. This memorandum clearly defines what the duration of the agreement is, three years. Even if all of the other terms were in dispute, this memorandum provides the terms which this Court in Levin v. Knight held are essential to a contract, subject matter, price, and the party against whom enforcement is sought. So, Your Honor, my contention is, and based upon Levin v. Knight and Siemens' opinions, that this memorandum is clearly sufficient to satisfy the statute of frauds for the memorandum requirement. And Hurley's argument, taken to its illogical conclusion, would be that anyone who wanted to get around a contract they'd entered into could fabricate, in essence, terms that they deem essential, that the other party is not even aware of. And that's clearly not the case. I think the case law is very clear on this point. Only terms that are in dispute need to be in the memorandum. Where is that proposition from, that only terms in dispute? I thought it was only the essential terms had to be in the memorandum. That is correct, Your Honor. You put it in terms of only the terms in dispute need be in the memorandum. It's two different things. You're right. Pardon me, Your Honor. Only essential terms that are in dispute. In other words, if the subject matter is in dispute, price duration. Well, wait. Maybe you're not catching my distinction. The way I understood the California statute of frauds and California case law on it was that the memorandum need not comprehend all the terms of the contract, only the essential terms. The way you're putting it is the memorandum need not comprehend all the terms of the contract, whether essential or peripheral. It need only contain the disputed terms. Two different things. Not disputed essential terms, Your Honor. And I think that is the law. And that's because the purpose of the statute of frauds, which goes back to English common law, is to avoid fraud, fraudulent contracts, people saying that a contract existed when, in fact, it didn't exist. Under the R.I.P. Okay. What authority do you have for this proposition that only the disputed terms have to be in the contract? This Court's ruling, 11 v. Knight. 11? 11 v. Knight, Your Honor, which is 780 Fed Second 786 on page 787. Okay. Now I see what you're doing. And the reason for that, Your Honor, is that you have to add the decision of the California Supreme Court in Siemens. Yes, Your Honor. Siemens seems to say that if the context and the other terms are readily – if the other terms can be readily implied from the context, that those terms wouldn't be disputed. It would be – they would be read into what the contract was. In other words, they're implied into the entirety of the contract. This case goes even farther, Your Honor, because in this case, the only term of dispute is duration. And that's actually in the letter. And that is in the letter. And there's no requirement in this kind of – I have to say in my own analysis of the statute of frauds in California, this kind of tripped me up. There's no requirement, it seems to me – I haven't found one – in California law that the memorandum expressing the understanding between the parties has to actually be between the parties. There's actually law that states that it does not have to be between the parties. It can be a letter to someone else. And that's because really the statute of frauds is just to prevent – it needs to have some measure of reliability before you can seek to enforce a contract. And if someone's telling some third party this is the contract, then that gives it some measure of reliability. Yes, Your Honor. And, you know, really the issue of duration is something that needs to be hashed out in front of a jury. Well, that's my next question. So if we were to rule for you that the statute of frauds doesn't prevent this action going forward because you have this memo, you still have to go back to court and prove the agreement. Yes, Your Honor, because – To the witnesses and – And a lot of that testimony has already been – you know, we had a trial on the issue of the Lanham Act. And a lot of that testimony was already entered into evidence in connection with the damages. You know, what is Noah Johnson's actual, you know, fair market value? Yes, Your Honor. It would – it's being raised as an affirmative defense. An affirmative defense which the Court held on the summary judgment knocked out his contract claim. You know, it's – if both parties agreed to all the terms, all the essential terms in the agreement, you wouldn't even need a writing. I mean, really, to satisfy – to satisfy the writing requirement in this case, all we'd need is an e-mail from someone at Hurley, you know, an officer at Hurley, stating, you know, Noah, your deal's for three years, because all the other terms are undisputed. Everybody, you know, there's no dispute that this contract was essentially the same as the contract of the preceding year, with the exception that the numbers were different. You know, same performance provisions, same, you know, same everything. It's a form contract that Hurley uses for the surfers. With regard to the second issue that takes this outside of the statute of frauds is the fact that the contract could be terminated, therefore, under the law, performed within a year. This contract had three performance provisions. Roberts. Did it have a termination clause, or are you just talking about how if there were a breach, then it would be over? Correct. The laws in California, there's plenty of law on this. If the contract can be terminated under any possible scenario. I thought there were two different things. Termination where the contract says either party can terminate on 30 days' notice or either party can terminate by paying X dollars termination fee, that that's what you're talking about there. And you mean if a contract says we'll supply you with all of your requirements for gypsum for the next three years, that is a statute of frauds contract, even though if no gypsum is supplied or no payment is made, it may be terminated on account of breach sooner. That's not correct? Under the second scenario, Your Honor, if one side breached that agreement and didn't provide the gypsum, then it could be terminated within a year, potentially terminated within a year. But that's not a contract that could be performed within a year. That's a contract that could fail to be performed within a year. And the California courts deal with that. Which case should I look at on that? You already surprised me quite correctly with language in one California Supreme Court case. Maybe there's another. I address it in my brief, so I'll flip to that. Foley v. Interactive Data at a Supreme Court case. If it can be breached in a year, the statute of frauds doesn't cover it. If it can be terminated under any possible ---- Breach will terminate it. Right. If it can be terminated under any possible scenario. And the reason for that, again, is ---- But that can't be right because that would mean the statute of frauds has no bite whatsoever because the rule is that if someone breaches and it's a material breach, giving the other side an excuse to terminate, well, then that's just in all contracts. And if that's true, then there's no statute of frauds applicability. I mean, it just can't be. Well, I think the ---- again, I think the California courts have made it very clear since Judge Toberner's opinion in 1964 that they are ---- they are giving the California statute of frauds an incredibly narrow interpretation. Particularly this ---- But the statute of frauds in California is like the parole evidence rule in California. I mean, they're giving it a very, very narrow interpretation. I think if ---- Well, I understand that. The interpretation you're arguing for means that it disappears because every contract can be breached so as to allow excusable termination by the other side. I think if there was a provision in the contract that said no matter what, Hurley is required to honor the contract and pay Mr. Johnson X amount of money, even if he doesn't wear this, have a sticker on the surfboard or ---- I see. So you're saying, oh, there's a tiny category of contract that says no matter what the breach, no matter how egregious the breach, you still owe me a million dollars, that contract. There's a provision in there that says you have to pay Mr. Johnson no matter what. Okay.  Then that gets you out of it. But in this case, you have three performance provisions. He's got to keep a sticker on the top portion of the surfboard, and the reason for that is when they're getting their photographs taken and everything, everybody sees the Hurley logo on his board. He wears his logo clothing at all surf-related events, and he acts in a professional manner. And Paul Gomez, the person that Hurley is in charge of at that time running the surf team, has testified that he has actually terminated people for violating those provisions. And Noah Johnson testified in his deposition that, yes, I could be terminated if I don't comply with these provisions. If he shows up with a competitor's shirt on like Quicksilver and says, you know, no more Hurley, you don't ---- I mean, Hurley is going to fire him right then and there. And so his contract could be terminated right then and there. Before your time runs, let me ask you about a matter that may be relevant, not so much to the individual amount, but as to whether or not ---- I think I've got this right ---- as to whether or not attorney's fees can be recovered. That is to say, if you prevail under California Civil Code 3344, knowingly using another name, I gather you get attorney's fees. They're mandatory. But if you prevail as to damages for that amount under your other provisions, you don't get attorney's fees. Is that right? I do get them because I would get the statutory remedy of $750. Under the California statute, you can get several remedies. You can get either the statutory remedy or the actual damages. You can get profits. You can get punitive damages, emotional distress damages. But if we were to prevail on the contract claim, obviously, the actual damages would be duplicative and we wouldn't get the actual damages in the statutory claim. We're not asking for double recovery. No, I understand that. No, I'm ---- let me just ask the question so that you can answer it without my interference. Under what circumstances are you entitled to attorney's fees? Prevailing party under Section 3344 and under the Lanham Act claim under exceptional circumstances. And are you entitled to attorney's fees for a breach contract? There's no fee. Does the contract have anything in it about attorney's fees? There's no fee provision in there. Okay. Can I ask one question on the damages? What was the evidence before the Court as to the fair market value of Johnson's services for a month? Sure. The evidence was based upon his endorsement history. In other words, what he had agreed to get as part of the renewal contract, which was the $5,000 a month that everyone agreed to. The fact that he had never signed anything less than a one-year agreement. Also, I presented to the Court all of the contracts with all of Hurley's other sponsored athletes, which were all a minimum of one-year duration up to three, and I think one was for five years. And the fact that at Noah Johnson's level, the $5,000 and up level, or actually the $3,000, I believe, and up level, and there's some guys that were at $8,000, were all three-year deals. Also, we had an agent come in who represented Oscar De La Hoya, but also some surfers, Noah Johnson being among them, that stated in his contract it is the custom and practice in surfing to have a minimum of a one-year deal. And the reason for that is when a surfer signs it, it's just like in any sport. Like you think of Nike, you think of Michael Jordan or Tiger Woods. And surfing is just like any other sport. You know, when they sign these endorsement deals with a major sponsor, they affiliate their names with that sponsor. So there's a value to the exclusivity that you're arguing is not reflected in the $5,000 a month? Absolutely, Your Honor. It's unheard of. There's no way that they could get someone of Noah Johnson's caliber for one month. Why wouldn't that be a judgment for the prior effect? I don't see how we could overcome the prior effect's determination. Well, I think the district court abused its discretion because there was no evidence. We refute for clear error on that point, don't we? I think it's abuse of discretion. Well, I'm not sure. Go ahead. Go ahead. But I think there was absolutely no evidence, and none presented certainly by Hurley, that anybody in surfing his caliber or anybody, period, had agreed to do a one-off deal. But why is that the measure? This vocabulary may be not the vocabulary you're accustomed to using in this. It's the difference between a liability rule and a property rule. That is to say, you have property that you can sell me at a certain price, and you can say, well, I'm not going to sell you my house for under $1 million. But if I burn down your house, and it turns out that the damage to you in rebuilding the house is $100,000, that's all you get. That's to say, if it had been a voluntary deal, you could have held out for $1 million. If it had been a voluntary deal, can I use your name or likeness? He says, no, not unless you do it for a year. Okay. That's the property rule. On the other hand, a liability rule, which is a tort rule, I use it for a month. You don't necessarily get the contract you would have insisted upon. You get the harm to yourself. Do you understand the difference? I understand the difference. But as was discussed actually in the prior argument, you know, the right publicity is you're dealing with the theft of a property right. And the theft here was, if that's the right word, and I'll call it that for present purposes, was for a month. It was for a month. But what is the value? And McCarthy goes into that, because the risk that we run into here is that in just awarding them basically the actual time of the misappropriation, you encourage misappropriation, because first thing, people are going to think, well, heck, I might as well just misappropriate it. And if I get caught, then all I have to do is pay for the value of the property. But you see, that's true of all tort law. And when you really want to discourage it, then you attach punitive damages when the behavior was bad enough. Well, I think McCarthy addresses this issue head on that, you know, in California we've got a statute that states, you know, and it's part of the public policy of California to protect an individual's right to control the use of their name and likeness, not only to be paid for it, to control it. And when you have a theft of someone's name and likeness without their permission, you know. That's usually what a theft is. Yeah. That person should be compensated. You know, and I use the Tiger Woods example. You know, Tiger makes $30 million. And if you wanted to use his name for two minutes of commercial, you pay him $117 under this analysis. Okay. I got it. And that's all right. Thank you, counsel. Thank you. May it please the Court. Kent Ragour for Defendant Hurley in this case. I'd like to talk about two points primarily here and then, of course, open myself up to any questions Your Honors have. First, I'd like to talk about the breach of contract statute of frauds issue, and then I would like to address one point at least on the cross-appeal. I had a lot of trouble with your statute of frauds argument. A lot of it seemed irrelevant about how this fellow, Johnson, is a pretty unimpressive guy in the way he's portrayed in your brief. It doesn't matter. And I had a lot of trouble with the argument that not every term is in the letter by the CFO, because not every term has to be. I had thought it was only the essential terms, and they stand corrected. It's even narrower, only the essential terms in dispute. Gosh, the only term in dispute is the duration. And that's in there. And then I have trouble with your argument that Oaksner didn't have personal knowledge of the deal, didn't know what he was talking about. That strikes me as irrelevant. The question is whether there is a memorandum signed by the party to be charged or its agent, not whether the memorandum is correct. So I'm not getting to first base. Tell me what I'm missing. Let me try to get you through all three bases and to the home run. On the statute of frauds, and I need to correct them if Your Honor is under the impression now that the case is 11 v. 9 and Siemens. I just looked at it. I just looked at both of them with my own eyes to see if that was true, because, frankly, I thought you needed the essential terms. So it looked like they were there. If I may, then, start with the California Supreme Court, Siemens. I've got it right here. That page, it crosses from 762 to 763. It is well settled that to be enforceable under the statute, such writing must contain the essential elements of a specific consummated agreement. And it goes on. Only the essential terms must be stated. Details. I'm sorry. I have Siemens in front of me, but because of the way this Lexis stuff works, I have trouble finding the page. Where are you reading from? I'm reading from, it crosses over from 762 to 763. Oh, I'm with you. It is well settled at the beginning of that paragraph. I'm with you. Okay. In the next sentence, only the essential terms must be stated. Details or particulars need not be. What is essential depends on the agreement and its context. And then you put note 4. I had gotten to there, and I thought, well, the essential terms are stated in the Ochsner memo. Can you go to the Lombardo case? But then I have even more trouble with your argument when I get a little further in the Siemens case to pages 764, 65, the runover paragraph that starts, it is important to remember. I don't get what your response is to that paragraph. Okay. At the end of it, because that's the quote that is in the Levin v. Knight case. That's right. At the end of that portion where it says, where only an evidentiary purpose is served, the requirement of a memorandum is read in the light of the dispute which arises and the admissions of the party to be charged. There is no need for evidence on points not in dispute. In that case, all of the essential terms were included in the memorandum, just as they were in the Levin v. Knight. The Court said all of the essential terms were included. Therefore, there was no need for any of the other terms, which were not the essential terms, to be included, to be discussed, even if there was dispute over them, because all of the material essential terms were included in the memorandum in those two cases. Which goes back, which is consistent with the other law that we've cited and the one that the district court cited repeatedly, Lombardo, which is at 169 Talap III at 538 to 39, every material term of an agreement within the statute of frauds must be included and must be reduced to writing, which then brings us back to Michael Ostner's December 22, 1999 letter to the credit union. I think price and quantity were left out in the Siemens contract. In the Siemens?  So it's not as though every, every term was set out. Your Honor, footnote 4 on page 765 states, in this regard, this is in Siemens, it is worthy of note that even standards agents seem to agree that the letter contained all essential terms. That's right, because they decided it was, I think they said it was a requirements contract that posted price plus a number. And the requirements contract language is from Levin v. Knight on page 787, where it says, The written memorandum indicates sufficiently the few terms deemed essential as a matter of law by California courts. What essential term was omitted from Johnson's contract in the memo? As the district court stated, and I agree, that it doesn't contain any obligation on Hurley to pay incentives, to pay travel expenses, wet suit allowances. None of those were in dispute, right? None of those were in dispute. That they were part of the contract, that's correct. So what does it matter that they're not discussed in this third-party letter? The public policy behind the statute of frauds is so that we, before we let a lawsuit, we don't let a frivolous lawsuit go forward where there's no, nothing reliable to indicate that a contract even existed. Because if you require the memorandum or writing to have all of the material terms of the contract in it, or if you have to go with two documents or three to put them together to create that, then you've got sufficient evidence that supports the oral contract itself. In this case, if you've just got one of those elements instead of all of the elements, you open this up to what was the purpose of the Mike Oxner memo. It wasn't to confirm a contract. It wasn't to recite the terms of a contract. It was simply as a favor to somebody to tell somebody else this is what the contract   It was simply as a favor to somebody to tell somebody else this is what the contract is. And isn't that something to be adjudicated by a jury, whether it all actually existed? The district court in this case held a two-day bench trial at the conclusion of which he stated that it appeared the entire trial was, once again, litigating the contract claims, even though they are not. But he didn't litigate the contract claims. He'd already granted summary judgment that the statute of frauds barred the contract. The judge did not. You're correct. The parties did. I'm interested in probing this fair market value question under misappropriation cause of action. And you heard the earlier argument. I wanted to add to Judge Fletcher's hypothetical about harm, the type of harm that comes from a misappropriation. He said it would be $1,000 that he should have been entitled to get that he didn't get. But this is an intellectual property kind of claim. And it's not just the economic value that's attributed to the use of the name and likeness. It's the fact that the person who has the right to it has the right to control it and to exclude other people from using it. And there's a value, a traditional value in intellectual property cases that's assigned to the right to exclude, because that's what helps make your right more valuable. In the prior case, for example, Mr. Schwartzenegger might not want to be associated with a car dealership in Ohio. In this case, it would appear that Hurley seems to have a very high reputation in selling surfing supplies in the industry. And perhaps there's a value associated to Mr. Johnson being associated with Hurley. That's a different value than being associated with, I don't know, maybe a Chilean marketer that sells in Chile. So there would be a different measure than just saying here's what Hurley was willing to pay for a month. It would be if they hadn't used it and if Mr. Johnson didn't have the belief that this contract was ensuing, he could go and sell it to someone else. But maybe he wouldn't want to sell it to just anyone and maybe he wouldn't want to sell it to Hurley. Isn't that a value? There's a different value here that we seem to not be measuring. This is a very different value placed on this, on the measure in this case versus, for example, the Schwartzenegger case was argued before this. It's the same cause of action, though. I suppose if, since, if Johnson wins, he would be able to prove, wouldn't he, that they did not they breached their contract with me, so they're not entitled to hold my payment down to the contract price. I'm entitled to the fair market value. Yes. The two, what's distinguishable between these cases is the higher fair market value for Johnson and Schwartzenegger. If he could, but he came into trial, he went through two days of trial and he didn't submit any evidence of any higher market value, the only evidence in which the district court found the best evidence of what the arm's-length market value was is what the two parties had contracted to through at least December of 2000, which was $5,000 per month. Perhaps, perhaps under any standard of review, what the district court may have done is apply the wrong legal standard, the wrong measure of value. He's supposed to do fair market value, but the question is not, it's a legal question whether that would be for one month or one year. The fact that it's only $5,000 for that one month is not really in dispute. It's a question of what is the measure of fair market value in this kind of a contract. But we have to understand that the only thing that was at issue here was a one-month inadvertent, mistaken, innocent, whatever term you want to put on it, carryover. The contract, from my client's point of view, ended on December 31, 2000. They forgot to take the name and the picture off of a roster of 30 team riders off the website for a month. Got a cease and desist letter, took it off. That was it. So it was only a one-month carryover, and that's why the case law that we presented to the district judge, the district judge read and opined about, is very analogous. What happens when you have a leasehold interest and you hold over for a month, and you hold over if it's an A.M., P.M., and you decide, you know, you lose your franchise, and you have to now demark it, you have to take the purple and the orange markings off, the measure for whatever the damage is is for the holdover period. It's not for this contract. It's a three-year contract, and therefore, if it's one minute past New Year's Eve into that next year, Mr. Johnson gets to come back and say, hold it, I get the rest of the two years of my contract. That's not the damage. It was just an inadvertent carryover for that short period of time. And that's the judge's look at, how do I measure what that value is? Why are you looking at your client's conduct, though? You're really supposed to be looking at the fair market value of Mr. Johnson's services, not what your client did or didn't do, which also confused me in the district court's order, because that he found that was all inadvertent, but he also found it an intentional violation, a knowing use under Section 3344. So in measuring fair market value, we don't look at your client's conduct. We don't even look at the value to you. We look at the value on the market generally. And the value to Mr. Johnson was $5,000 a month, and he came in with nothing that said anybody had offered him three years or two years or one year. That's why I asked him the question, what was the evidence on the fair market value? You could say, well, the evidence of the fair market value was what you were willing to pay for a month, because that's all you used it. It seemed to me that we have a legal question here of what is the appropriate measure. In the absence of any evidence coming in saying that, yes, people were lined up making me offers for this, which he didn't bring in, Judge Taylor was left with nothing but, okay, the best evidence I've got then is of what you agreed to pay, $5,000 a month. I'm having a little trouble with that because of the quantity. The evidence was that Johnson would sell his image for $5,000 a month as part of a three-year contract, but I don't know that that justifies the inference that it was worth $5,000 a month for a one-month holdover. I'm thinking if I go to Sam's Warehouse to buy shampoo and the price of one of their bottles is, I don't know, $0.08 an ounce, that doesn't mean I can say, oh, well, I'll take two ounces of shampoo then and give you $0.16. I have to take the whole gallon bottle to get it for the $0.08 an ounce, and I'm thinking maybe you have to take the whole three-year contract to get it for $5,000 a month, kind of like buying a gigantic bottle of shampoo. If we were in the market for renegotiating his contract, which we weren't, it was ended at that point, fine, but that's not the position we were in. We were in a first-year contract for $19.99, then a second-year contract for $2,000, which ended, sorry, it was a holdover for that one month, and that's all it is. So at that point, it's not he did not come back to us and say, okay, now here's my price for the next year, for the next two years, and this is what you're going to have to pay me. If you allowed that argument to stand, what it would permit Mr. Johnson to have is to say, okay, you can use my image for that one month, but you would have had to pay me for the next two years of my time, which is $120,000. And then... Is there any showing in the record that your use of his face on your website for the month prevented him from entering into a contract with anyone else, harmed him in any way besides the misappropriation for that month? Is there any evidence of any harm beyond the bare fact of your using that for the month? He made arguments about that. Judge Taylor found that they were speculative and unsupported by the evidence. Okay.
judges: Kleinfeld, Wardlaw, W Fletcher